UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

EDWARD G. BUEHLER,                      )
                                        )
          Plaintiff,                    )
                                        )
     v.                                 )     No. 4:17 CV 1779 RWS
                                        )
NANCY A. BERRYHILL,                     )
Deputy Commissioner of Operations,      )
Social Security Administration,         )
                                        )
          Defendant.                    )

## MEMORANDUM AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial

review of the Commissioner's decision denying his applications for disability

insurance benefits and supplemental security income.  Because the

Commissioner's decision is supported by substantial evidence on the record as a

whole, I will affirm the Commissioner's decision.

### Procedural History

On April 17, 2007, plaintiff filed applications for disability insurance

benefits pursuant to Title II, 42 U.S.C. §§ 401 *et seq*., and supplemental security

income pursuant to Title XVI, 42 U.S.C. §§ 1381 *et seq*.  (Tr. 333, 341).  He

alleged an amended onset date of March 20, 2007.  (Tr. 331-40, 341-43, 274).

Plaintiff alleged he became disabled as of March 20, 2007, because of arthritis in

his hands, back and knees, chronic epicondylitis, chronic right rotator cuff tendonitis, recurrent knee cyst, plantar fasciitis, gastroesophageal reflux disease, recurrent abscess and cellulitis, attention deficit hyperactivity disorder, and bipolar disorder.

His applications were denied on initial consideration. (Tr. 147-49). After a hearing, ALJ James Steitz issued a decision denying plaintiff's applications on October 28, 2008. (Tr. 150-62). On October 13, 2010, the Appeals Council granted plaintiff's request for review. (Tr. 163-167). The Appeals Council concluded that (1) ALJ Steitz' determination of plaintiff's residual functional capacity (RFC) was not consistent with the record and failed to address plaintiff's physical and mental limitations, (2) the ALJ failed to address a treating physician's medical source opinion, (3) the ALJ failed to obtain testimony from a vocational expert (VE), and (4) subsequent claims filed in June 2009 needed to be combined with plaintiff's original case. Accordingly, the Appeals Council remanded plaintiff's case for further proceedings. (*Id.*)

On remand, ALJ Victor Horton held administrative hearings on February 2, 2011, and May 18, 2011. (Tr. 71-128, 38-70). ALJ Horton denied plaintiff's applications on July 5, 2011; this time, the Appeals Council denied review on October 16, 2013. (Tr. 11-37, 1-6). Plaintiff appealed to this Court for judicial review. On March 30, 2015, United States District Judge Carol E. Jackson

remanded the case for further proceedings, concluding that ALJ Horton erroneously discounted the opinions of three examining physicians and improperly assessed plaintiff's credibility. (Tr. 1193-1231).

Plaintiff attended a fourth administrative hearing conducted by ALJ Robin Barber on March 1, 2016. (Tr. 1088-1159). ALJ Barber denied plaintiff's applications on February 16, 2017. (Tr. 1063-1087). The Appeal's Council considered plaintiff's written exceptions to the ALJ's decision, but did not alter the decision. (Tr. 1051-61). Thus, plaintiff has exhausted his administrative remedies, and the ALJ's decision stands as the final decision of the Commissioner.

In this action for judicial review, plaintiff contends that the ALJ erred in her consideration of his residual functional capacity (RFC) and by according improper weight to certain medical evidence in this case. Plaintiff asks that I reverse the Commissioner's final decision and remand the matter for further evaluation or calculation of benefits. For the reasons that follow, I will affirm the Commissioner's decision.

## Medical Records and Other Evidence Before the ALJ

With respect to the medical records and other evidence of record, I adopt plaintiff's recitation of facts set forth in his Statement of Uncontroverted Material Facts (ECF #17) to the extent they are admitted by the Commissioner (ECF #22). I also adopt the additional facts set forth in the Commissioner's Statement of

Additional Material Facts (ECF #22), as they are unrefuted by plaintiff. Together, these statements provide a fair and accurate description of the relevant record before the Court.

Additional specific facts will be discussed as needed to address the parties' arguments.

## Legal Standards

To be entitled to disability benefits, a claimant must prove that he is unable to perform any substantial gainful activity due to a medically-determinable physical or mental impairment that would either result in death or which has lasted or could be expected to last for at least twelve continuous months. 42 U.S.C. §§ 423(a)(1)(D), (d)(1)(a). To determine whether claimants are disabled, the Commissioner evaluates their claims through five sequential steps. 20. C.F.R. § 404.1520; *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (describing the five-step process).

Steps one through three require that the claimant prove (1) he is not currently engaged in substantial gainful activity, (2) he suffers from a severe impairment, and (3) his disability meets or equals a listed impairment. 20 C.F.R. § 404.1520(a)(4)(i)-(iii). If the claimant does not suffer from a listed impairment or its equivalent, the Commissioner's analysis proceeds to steps four and five. Step four requires the Commissioner to consider whether the claimant retains the RFC

to perform his past relevant work (PRW). *Id.* at § 404.1520(a)(4)(iv). The claimant bears the burden of demonstrating he is no longer able to return to his PRW. *Pate-Fires*, 564 F.3d at 942. If the Commissioner determines the claimant cannot return to PRW, the burden shifts to the Commissioner at step five to show the claimant retains the residual functioning capacity (RFC) to perform other jobs that exist in significant numbers in the national economy. *Id.*; 20 C.F.R. § 404.1520(a)(4)(v).

The ALJ is required to evaluate the credibility of a claimant's testimony, including the claimant's subjective complaints of pain. *Holmstrom v. Massanari*, 270 F.3d 715, 721 (8th Cir. 2001). In so doing, the ALJ is not permitted to ignore the claimant's testimony even if it is inconsistent with objective medical evidence. *Basinger v. Heckler*, 725 F.2d 1166, 1169 (8th Cir. 1984). After considering the claimant's testimony, the ALJ may disbelieve it if it is inconsistent with the record as a whole. *Battles v. Sullivan*, 902 F.2d 657, 660 (8th Cir. 1990). To properly evaluate the claimant's subjective complaints, the ALJ must consider the factors enumerated in *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984):

> [The] claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; and (5) functional restrictions.

*Id.* at 1322. While the ALJ must consider the *Polaski* factors, she need not enumerate them specifically. *Wildman v. Astrue*, 596 F.3d 959, 968 (8th Cir. 2010). When the ALJ explicitly disbelieves the claimant's testimony and gives good reasons for such disbelief, a reviewing court will typically defer to the ALJ's finding. *Casey v. Astrue*, 503 F.3d 687, 696 (8th Cir. 2007). However, the ALJ retains the responsibility to develop the record fully and fairly in the course of the non-adversarial administrative hearing. *Hildebrand v. Barnhart*, 302 F.3d 836, 838 (8th Cir. 2002).

In reviewing the ALJ's denial of Social Security disability benefits, my role is to determine whether the Commissioner's findings comply with the relevant legal requirements and are supported by substantial evidence in the record as a whole. *Pate-Fires*, 564 F.3d at 942. "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Id.* In determining whether the evidence is substantial, I must consider evidence that both supports and detracts from the Commissioner's decision. *Id.* As long as substantial evidence supports the decision, I may not reverse it merely because substantial evidence exists in the record that would support a contrary outcome or because I would have decided the case differently. *See Johnson v. Astrue*, 628 F.3d 991, 992 (8th Cir. 2011). I must "defer heavily to the findings and conclusions of the Social Security

Administration." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010) (internal citation omitted).

## ALJ's Decision

The ALJ first found that plaintiff met the insured-status requirements of the Social Security Act through March 20, 2007. (Tr. 1069; ECF #13-3). She found that plaintiff had not engaged in substantial gainful activity since his alleged onset date. (*Id.*). She also found that plaintiff suffered from the following severe impairments: "osteoarthritis of the hands, wrists, left elbow and knees, osteoarthritis and tendonitis of the right shoulder with recurrent labral tear, degenerative disc disease, recurrent right knee cyst, an attention deficit hyperactivity disorder and a bipolar disorder." (*Id.*). The ALJ did not find plaintiff's alleged epicondylitis, plantar fasciitis, abscess, cellulitis, and gastroesophageal reflux disease to be severe impairments. (*Id.*). The ALJ found that this combination of severe impairments did not equate to one of the listings denominated in 20 CFR 404, Subpt. P, App. 1. (Tr. 1069-1070).

The ALJ determined that plaintiff retained the residual functional capacity (RFC) to perform the following tasks:

> [Lift] or carry twenty pounds occasionally and ten
> pounds frequently; stand thirty minutes at a time for a
> total of two hours in an eight-hour workday; walk thirty
> minutes at a time for a total of two hours in an eight-hour
> workday; sit three hours at a time for a total of seven
> hours in an eight-hour workday; occasionally climb stairs

7

or ramps; occasionally reach overhead with his right upper extremity and frequently reach overhead with his left upper extremity; frequently perform all other manipulative activities except that fingering and feeling with his left upper extremity can be continuously performed; and frequently operate foot controls bilaterally. He has also been able to operate a motor vehicle on a frequent basis and have occasional exposure to moving mechanical parts, but he has been unable to climb ladders, ropes or scaffolds and he has had to avoid all exposure to unprotected heights. The tasks must also be non-complex and non-detailed in nature and performed in an environment where changes in the work setting do not occur more than occasionally and where there is no direct interaction with the public, only casual and infrequent interaction with co-workers and no more than occasional interaction with supervisors.

(Tr. 1070).

Based on this RFC determination, the ALJ found that plaintiff was no longer able to perform his past relevant work (PRW) and did not possess any transferable skills. (Tr. 1077). The ALJ consulted a vocational expert (VE) to assess whether jobs within plaintiff's RFC existed in significant numbers in the national economy. (Tr. 1077). The VE identified the jobs of mail sorter, router, and collator operator; she further identified these jobs as light unskilled work within plaintiff's RFC. Finally, the VE identified 22,383 mail sorter jobs, 53,624 router jobs, and 14,806 collator operator jobs in the national economy. (Tr. 1078). The ALJ therefore determined that plaintiff was not disabled within the meaning of the Social Security Act. (*Id.*).

## Discussion

A.    <u>RFC Determination</u>

Here, plaintiff contends that the ALJ's RFC determination is not supported by substantial evidence on the record as a whole. In particular, he argues that the ALJ improperly considered some evidence and ignored other relevant evidence.

RFC is defined as "what [the claimant] can still do" despite his "physical or mental limitations." 20 C.F.R. § 404.1545(a). The ALJ must determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations. *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000) (citing *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995)). The record must include some medical evidence that supports the RFC. *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir. 2000) (internal citation omitted). However, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016).

Plaintiff essentially argues that I should reweigh the evidence considered by the ALJ in her determination of plaintiff's RFC. That is not my role. *Hensley*, 829 F.3d at 934. As discussed below, the ALJ properly factored into her RFC determination an assessment of plaintiff's credibility and extensive objective medical findings of record, including the diagnostic imaging results and physical

examination findings, which do not support plaintiff's claimed limitations. In so doing, she did not substantially err.

There is substantial evidence on the record as a whole to support the ALJ's conclusion that plaintiff was not as limited as he alleged. In December 2007, plaintiff's treating physician Robert I. Markenson, M.D., indicated that plaintiff could lift up to 25 pounds, stand and walk at least three to four hours, and sit for eight hours in an eight hour workday. (Tr. 622). And in 2010, Dr. Markenson again indicated that plaintiff could lift up to 25 pounds occasionally and 10 pounds frequently, and stand and sit for eight hours during an eight hour day. (Tr. 1015). Anne Winkler, M.D., opined that plaintiff could lift up to 20 pounds occasionally and 10 pounds frequently, stand or walk for 30 minutes at a time and for two hours each over the course of an eight hour workday, and sit for three hours at a time and for seven hours in a workday. (Tr. 1072). Dr. Winkler also stated that plaintiff could occasionally reach overhead with the right hand and frequently with the left hand, and reach in all other directions frequently. (Tr. 1072-73).

Treatment records also support the ALJ's RFC determination. Most of plaintiff's medical examinations at St. Anthony's Medical Center from 2011 through 2015 revealed fairly mild musculoskeletal findings. (Tr. 1072-73, 1375, 1423, 1440, 1518, 1541, 1558, 1572, 1593, 1595, 1741). Plaintiff's treatment records from the American Pain Institute from 2016 to 2016 also reflected normal

neurological function, muscle power and tone equal bilaterally, and normal limb movement, despite plaintiff's complaints of right shoulder pain and his Baker's cyst on the back of his knee. (Tr. 1072, 1631, 1633, 1684, 1714, 1895, 1897, 1899, 1908). Treatment records from Vincent P. Fortunado, M.D., also reflected normal physical examination findings apart from occasional knee swelling. (Tr. 1073, 1761, 1767, 1773, 1778-79, 1783). In March of 2015, an examination by Dennis Nam, M.D., revealed that plaintiff walked well with a "minimal" antalgic gait, no knee instability, and range of motion from zero to 120 degrees bilaterally. (Tr. 1870). A consultative examination performed by Inna Park, M.D., in July of 2007 revealed that plaintiff could get on and off the exam table without difficulty and perform a toe walk and partially squat. (Tr. 598-602). He had normal gait and station, no functional abnormalities in his hands, and some decreased range of motion in his knees and hips bilaterally, with no tenderness of the spine or back muscles, and a negative straight leg raising bilaterally. (*Id.*). The ALJ relied upon these findings of relatively normal examination results in reaching her RFC determination, and in doing so she did not substantially err.

Moreover, the ALJ did not simply adopt a light work RFC wholesale. To account for plaintiff's credible limitations, including his hand, knee, and shoulder pain, she found that plaintiff should never be required to climb a ladder, rope, or scaffold or work near hazards. The ALJ further limited plaintiff to only

occasionally climbing stairs or ramps or reaching overhead with his right upper extremity.

Plaintiff argues that the ALJ erred in relying upon the opinion of a single-decision maker when evaluating his RFC. While the ALJ noted that the single-decision maker "reviewed the record in July 2007, and suggested the claimant could perform light work so long as it did not require the climbing of ladders, ropes or scaffolds, or more than occasional overhead reaching with the right upper extremity, or more than occasional handling and fingering with the right hand," she did not otherwise discuss this opinion when formulating plaintiff's RFC. Therefore, any error in mentioning the single-decision maker's opinion in a lengthy discussion of the evidence -- the ALJ's RFC assessment spans nearly eight pages in a 13-page opinion -- is harmless. *See Draper v. Barnhart*, 425 F.3d 1127, 1130 (8th Cir. 2005) ("[A] deficiency in opinion-writing is not a sufficient reason to set aside an ALJ's finding where the deficiency has no practical effect on the outcome of the case[.]") (internal quotation marks, alteration and citation omitted).

Plaintiff also argues that the ALJ substantially erred by failing to mention that he was a candidate for knee and shoulder replacement surgery. Dr. Markenson opined that plaintiff would eventually require a shoulder replacement after performing surgery on plaintiff's right shoulder. (Tr. 1837-40). Matthew Smith, M.D, opined that "a total knee replacement is likely the only predictable way to

improve [plaintiff's] symptoms permanently" and referred him to a joint

replacement specialist on February 27, 2015, following x-rays of the plaintiff's

knees. (Tr. 1924). Although plaintiff characterizes his replacement surgery as

"impending," Dr. Smith's treatment notes indicate the opposite:

> [Plaintiff] was not interested in pursuing a knee
> replacement [in 2015]. I suggested that he meet with a
> joint replacement specialist to know *what he needs to do*
> *to become a candidate if his symptoms cannot be*
> *managed with nonoperative treatment* [such as ice,
> compression, oral anti-inflammatories, and physical
> therapy]. He was agreeable to that plan. We can see him
> back in 3 months for repeat steroid injection if this helps.

(Tr. 1924) (emphasis added). Despite his expressed shoulder and knee pain,

plaintiff elected not to pursue surgery and had not done so as of the date of the

ALJ's decision. The ALJ's decision not to discuss future, hypothetical treatments

that were ultimately not pursued was not erroneous and did not prevent her from

fully and fairly discussing the effects of plaintiff's shoulder- and knee-related

impairments on his RFC. (Tr. 1071-1073). *See also Black v. Apfel*, 143 F.3d 383,

386 (8th Cir. 1998) ("Although required to develop the record fully and fairly, an

ALJ is not required to discuss every piece of evidence submitted.") (internal

citation omitted); *Wildman*, 596 F.3d at 966 ("An ALJ's failure to cite specific

evidence does not indicate that such evidence was not considered[.]") (internal

quotation marks and citation omitted).

The ALJ also properly considered plaintiff's daily activities and assessed plaintiff's RFC consistent with his credible limitations. The ALJ's evaluation of the consistency between plaintiff's subjective reports and the record as a whole was based upon his own testimony, the objective medical evidence of record, and his daily activities. "The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001). I must defer to the ALJ's credibility determinations "so long as such determinations are supported by good reasons and substantial evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). When determining the credibility of a claimant's subjective complaints, the ALJ must consider all evidence relating to the complaints, including the claimant's prior work record and third party observations as to the claimant's daily activities; the duration, frequency and intensity of the symptoms; any precipitating and aggravating factors; the dosage, effectiveness and side effects of medication; and any functional restrictions. *Halverson v. Astrue*, 600 F.3d 922, 931 (8th Cir. 2010); *Polaski,* 739 F.2d at 1322. While an ALJ need not explicitly discuss each *Polaski* factor in her decision, she nevertheless must acknowledge and consider these factors before discounting a claimant's subjective complaints. *Wildman*, 596 F.3d at 968. "[T]he duty of the court is to ascertain whether the ALJ considered all of the evidence relevant to the plaintiff's complaints . . . under the Polaski

standards and whether the evidence so contradicts the plaintiff's subjective complaints that the ALJ could discount his or her testimony as not credible." *Masterson v. Barnhart*, 363 F.3d 731, 738–39 (8th Cir. 2004). It is not enough that the record merely contain inconsistencies. Instead, the ALJ must specifically demonstrate in her decision that she considered all of the evidence. *Id.* at 738; *see also Cline v. Sullivan*, 939 F.2d 560, 565 (8th Cir. 1991). Where an ALJ explicitly considers the *Polaski* factors but then discredits a claimant's complaints for good reason, the decision should be upheld. *Hogan v. Apfel*, 239 F.3d 958, 962 (8th Cir. 2001).

The ALJ summarized plaintiff's testimony regarding his daily activities as follows:

> [Plaintiff] has been able to tend to his personal care, prepare meals, … [wash] dishes and [launder] clothes, perform yard work, shop, drive, repair automobiles, attend his son's baseball activities (and perhaps even [coach] his son's baseball team at one point), [fish], [walk] for exercise, rehabilitate a house that was damaged by fire, and perform "side jobs"… There is no better evidence of an ability to work after an alleged onset date than employment and the other activities indicate a good ability to stand, walk, lift considerable weight, handle and finger objects, concentrate, complete tasks and otherwise function.

(Tr. 1076). "To establish disability, [plaintiff] need not prove that [his] pain precludes all productive activity and confines [him] to life in front of the television." *Baumgarten v. Chater*, 75 F.3d 366, 369 (8th Cir. 1996). However, "[acts] which are inconsistent with a claimant's assertion of disability reflect

negatively upon that claimant's credibility." *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2010).  Baseball coaching, car repair, yard work, home rehabilitation, and performance of side jobs are all beyond the scope of the "light housework." *Baumgarten*, 75 F.3d at 369.  Moreover, "working generally demonstrates an ability to perform a substantial gainful activity." *Medhaug v. Astrue*, 578 F.3d 805, 816 (8th Cir. 2009) (internal quotation marks and citation omitted).  Plaintiff was working in Texas in 2008, despite alleging an onset date of 2007, and as recently as 2015 told people that he was self-employed or doing "side jobs," which weighs against his claim of disability. *Vance v. Berryhill*, 860 F.3d 1114, 1121 (8th Cir. 2017) (holding that inconsistency between plaintiff's subjective complaints and evidence regarding activities of daily living raised legitimate concerns about her credibility); *Goff v. Barnhart*, 421 F.3d 785, 792 (8th Cir. 2005).  Here, the ALJ was not required to fully credit all of plaintiff's assertions regarding his limitations given his daily activities, which included working.  The ALJ also properly considered plaintiff's possible misuse of medications in her credibility assessment. *Anderson v. Barnhart*, 344 F.3d 809, 815 (8th Cir. 2003) ("[a] claimant's misuse of medications is a valid factor in an ALJ's credibility determinations.").  Even if the ALJ could have drawn a different conclusion about plaintiff's credibility after reviewing his daily activities, I may not reverse the Commissioner's decision merely because substantial evidence

could also support a contrary determination.  *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010).  The ALJ discounted plaintiff's subjective complaints only after evaluating the entirety of the record.  In so doing, she did not substantially err, as subjective complaints may be discounted if inconsistencies exist in the evidence as a whole.  *Hinchey v. Shalala*, 29 F.3d 428, 432 (8th Cir. 1994).

Here, the ALJ formulated plaintiff's RFC only after evaluating his credibility and discussing the relevant evidence, including his testimony, the medical evidence, and his daily activities.  After consideration of all this evidence, the ALJ concluded that plaintiff retained the capacity to perform light work, with modifications tailored to his credible limitations.  In so doing, she did not substantially err.  The ALJ's RFC assessment takes into account plaintiff's credible limitations of record and is supported by substantial evidence on the record as a whole.

B.    Weight Accorded to Opinion Evidence

When evaluating opinion evidence, an ALJ is required to explain in her decision the weight given to any opinions from treating sources, non-treating sources, and non-examining sources.  *See* 20 C.F.R. § 404.1527(e)(2)(ii).  The Regulations require that more weight be given to the opinions of treating physicians than other sources.  20 C.F.R. § 404.1527(c)(2).  A treating physician's assessment of the nature and severity of a claimant's impairments should be given

17

controlling weight if the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. *Id.; see also Forehand v. Barnhart*, 364 F.3d 984, 986 (8th Cir. 2004). This is so because a treating physician has the best opportunity to observe and evaluate a claimant's condition,

> since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

20 C.F.R. § 404.1527(c)(2).

When a treating physician's opinion is not given controlling weight, the Commissioner must look to various factors in determining what weight to accord that and any other medical opinion of record, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, whether the physician provides support for her findings, whether other evidence in the record is consistent with the physician's findings, and the physician's area of specialty. 20 C.F.R. § 404.1527(c), (e). Inconsistency with other substantial evidence alone is a sufficient basis upon which an ALJ may discount a treating physician's opinion. *Goff*, 421 F.3d at 790-91. The Commissioner "will always give good reasons in [the] notice of determination or decision for the weight [given to the] treating source's opinion." 20 C.F.R. §

404.1527(c)(2).

Plaintiff contends that the ALJ improperly weighed the opinions of his treating physicians. Plaintiff argues that the ALJ should have given controlling weight to one of Dr. Markenson's opinions dated April 25, 2011, which would have precluded plaintiff from performing light work. Plaintiff also argues that the ALJ improperly evaluated the opinions of Morris Alex, M.D., and Dr. Fortunato, which were consistent with Dr. Markenson's April 2011 opinion. For the reasons that follow, the ALJ did not substantially err.

In April of 2011, Dr. Markenson completed a medical source statement on behalf of plaintiff. Dr. Markenson opined that plaintiff could not lift more than five pounds, stand and/or walk more than a total of two hours in an eight-hour workday, sit more than four hours in an eight-hour workday, or push or pull objects. He also stated that plaintiff could not reach, bend or kneel, would need to assume a supine or reclining position three to four times a day for thirty minutes at a time, and would need to prop up his legs three to four times a day for thirty minutes at a time. (Tr. 1043-44). Yet in a medical source statement dated December 21, 2010, Dr. Markenson opined that plaintiff could frequently lift six to ten pounds and occasionally lift 11 to 25 pounds (not overhead), continuously stand and/or walk eight hours during an eight-hour workday, sit continuously for

eight hours during an eight-hour workday with no need rest periods, and occasionally bend, kneel, reach, handle, and finger. (Tr. 1015-16).

The ALJ assigned no weight to Dr. Markenson's April, 2011 opinion as inconsistent with the objective medical record and his prior opinions. (Tr. 1073). She did, however, credit Dr. Markenson's earlier opinion from December of 2010, as well as one from December of 2007, in which he determined that plaintiff could not crouch or kneel but could occasionally lift up to 25 pounds, occasionally push and pull objects, stand and walk three to four hours per workday, sit eight hours per workday, balance without difficulty, occasionally stoop, bend, and reach, and frequently handle and finger objects. (Tr. 622).

Plaintiff argues that Dr. Markenson changed his evaluation of plaintiff's functioning between December of 2010 and April of 2011 based on the shoulder surgery he performed on plaintiff on December 2, 2010. However, Dr. Markenson performed the surgery weeks before he issued his report on December 21, 2010, and his opinion provided no explanation for the change in his evaluation of plaintiff's functioning. Under these circumstances, the ALJ did not substantially err in assigning no weight to Dr. Markenson's inconsistent opinion. Moreover, the ALJ did not reject the opinions of Dr. Markenson in their entirety. Instead, she considered those opinions which were consistent with the objective medical evidence and supported by the record as a whole. It is the duty of the ALJ to

weigh conflicting evidence and to resolve disagreements among medical opinions. *Cline v. Colvin*, 771 F.3d 1098, 1103 (8th Cir. 2014). Here, the ALJ did not substantially err when she assigned greater weight to Dr. Markenson's opinions from 2007 and 2010.

Plaintiff also argues that the ALJ gave insufficient weight to the May 2011 report of Dr. Fortunato, M.D., who precluded plaintiff from even sedentary work and recommended plaintiff recline for 60 minutes at a time, four times a day. (Tr. 1045). In giving Dr. Fortunato's report little weight, the ALJ noted the inconsistency between the claimed limitations and the relatively "normal musculoskeletal and neurological results" of his exams. (Tr. 1073). The ALJ properly discounted Dr. Fortunato's opinion as there is no indication of fatigue or other diagnosis in Dr. Fortunato's reports to support the specific recommendation of reclining four hours a day at one-hour intervals. Dr. Fortunato's examinations of plaintiff on December 8, 2014, December 30, 2014, and in June and August of 2015 yielded normal results with no complaints of fatigue or malaise. (Tr. 1783, 1776, 1778-79, 1773, 1767, 1758, 1761). The ALJ properly gave Dr. Fortunato's opinion little weight as it was inconsistent with his own exam results and with the record as a whole. *Julin v. Colvin*, 826 F.3d 1082, 1088 (8th Cir. 2016) (opinions of treating physicians may be given limited weight if they are inconsistent with the record) (citing *Papesh v. Colvin*, 786 F.3d 1126, 1132 (8th Cir. 2015)).

Plaintiff also argues that the ALJ gave insufficient weight to the opinion of medical expert Morris Alex, M.D., who testified at his third administrative hearing in May 2011. Dr. Alex testified that:

> [Plaintiff] has to avoid excessive heat and cold and high humidity. He could not be doing anything that would require reaching above his head. He should not be around dangerous machinery of any kind [or] climbing ladders or scaffolds of any kind… taking it in total, I would limit him to a sedentary level, considering everything.

(Tr. 51-52). The ALJ discounted Dr. Alex's testimony as inconsistent with the subsequent testimony of Dr. Winkler, who had access to a larger and more recently-updated volume of plaintiff's medical records. Dr. Winkler testified at the administrative hearing in March 2016 and responded to additional interrogatories in July 2016 upon receipt of additional medical records. (Tr. 1104-1130, 1973-1984). Dr. Winkler's opinions, issued with the benefit of access to the plaintiff's updated medical record, were consistent with Dr. Markenson's 2007 and 2010 reports and supported the ALJ's determination that plaintiff was capable of unskilled light work with modifications. Because Dr. Alex and Dr. Winkler both testified as medical experts, and because Dr. Winkler's testimony was more recent and supported by a more complete medical record, the ALJ properly resolved the inconsistencies in their testimony by giving greater weight to that of Dr. Winkler as consistent with other substantial evidence in the record as a whole. (Tr. 1072).

When assessing a claimant's RFC, "the ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions [of] any of the claimant's physicians." *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011). Instead, the ALJ must determine a claimant's RFC based on her review of the record as a whole. Here, the ALJ evaluated all of the medical evidence of record and adequately explained her reasons for the weight given this evidence. For the reasons set out above, substantial evidence on the record as whole supports the weight accorded by the ALJ to the medical opinion evidence in this case, so I will affirm the decision of the Commissioner as within a "reasonable zone of choice." *Fentress v. Berryhill*, 854 F.3d 1016, 1021 (8th Cir. 2017) (citing *Owen v. Astrue*, 551 F.3d 792, 798 (8th Cir. 2008)).

## Conclusion

When reviewing an adverse decision by the Commissioner, the Court's task is to determine whether the decision is supported by substantial evidence on the record as a whole. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001). "Substantial evidence is defined to include such relevant evidence as a reasonable mind would find adequate to support the Commissioner's conclusion." *Id.* Where substantial evidence supports the Commissioner's decision, this Court may not reverse the decision merely because substantial evidence exists in the record that would have supported a contrary outcome or because another court could have decided the case

differently. *Id.*; *see also Igo v. Colvin*, 839 F.3d 724, 728 (8th Cir. 2016); *Buckner v. Astrue,* 646 F.3d 549, 556 (8th Cir. 2011).

For the reasons set out above, a reasonable mind can find the evidence of record sufficient to support the ALJ's determination that plaintiff was not disabled. Because substantial evidence on the record as a whole supports the ALJ's decision, it must be affirmed. *Davis,* 239 F.3d at 966. I may not reverse the decision merely because substantial evidence exists that may support a contrary outcome.

Accordingly,

**IT IS HEREBY ORDERED** that that the decision of the Commissioner is affirmed, and plaintiff's complaint is dismissed with prejudice.

A separate Judgment is entered herewith.

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 7th day of May, 2018.